THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. RAFAEL TORRUELLA CORTADA, Defendant and Appellant.

No. 10441.  Argued June 7, 1944.—Decided July 10, 1944.

---

[4] See annotation in 70 A.L.R. 794, especially at pp. 799 to 802.

*Rafael Hernández Matos* for appellant. *R. A. Gómez, Prosecuting Attorney (Fiscal)*, and *Luis Negrón Fernández, Assistant Prosecuting Attorney*, for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The District Court of Ponce, on appeal, found Rafael Torruella Cortada guilty of a violation of Act No. 17 of 1931, in relation with §36 of the Penal Code, which violation, according to the complaint, was that he "illegally and voluntarily, and acting as Manager of the Municipal Pier of Ponce which was created by an ordinance or franchise granted by the Executive Council of Puerto Rico to the Municipal Government of Ponce, and acting for the Governing Board of said Municipal Pier of Ponce, which is the employer of the workers that worked therein, then and there helped to discount and discounted ten per cent (10%) of the wages earned by the workers, to be paid to another person."

Upon being sentenced to pay a fine of $50 or to be confined in jail one day for each dollar left unpaid, the defendant took the present appeal. He urges that the court below erred "in entering a judgment of conviction in this case, as the acts charged against the accused were never proved."

Sections 1, 5, 6, and 7 of Act No. 17 "An Act to regulate labor contracts; to guarantee the payment of laborers' wages; to fix certain penalties or violations hereof, and for other purposes," approved April 17, 1931,[1] provide as follows:

---

[1] In the book "*Legislación Social de Puerto Rico*," published by the Department of Labor, when transcribing this Act the following comment is made:

"The text of this Act is substantially similar to that of Act No. 91, approved in 1917 and promulgated by the Executive Secretary of Puerto Rico on March 31, 1919, by virtue of an opinion of the Supreme Court of Puerto Rico in the case of *Municipality of Quebradillas* v. *Executive Secretary* (27 P.R.R. 138). Act No. 91 was afterwards declared void by the United States Circuit Court of Appeals for the First Circuit in the case of *Porto Rico Telephone Company* v. *People of Puerto Rico* (47 Fed. (2d) 484). In 1931 the Act was re-enacted as it appears in this compilation without any other alteration than the

"Section 1.—In all contracts entered into with laborers, their wages shall be paid exclusively in lawful money of the United States of America, and if, because of any special agreement, custom or other motive whatsoever, they receive any money advances before the regular pay day, it shall be lawful for the employer to deduct said advance. If it is stipulated in a labor contract that all or part of the wages shall be paid otherwise than in money, the said contract shall be null and void so far as it refers to the promise or engagement to pay the wages in any form other than in lawful money of the United States of America.

"*     *     *     *     *     *     *

"Section 5.—Whenever the employer or his agent shall have advanced to the laborer any amount in lawful money of the United States of America, he shall have a right to deduct such sum from the wages of the latter. However, no amount shall be retained in excess of the total amount so advanced. No employer may, for any reason, deduct any part of the wages due to laborers in order to pay the same to any other person except in the cases provided in this section.

"Section 6.—For the purposes of this Act, the word 'employer' shall be understood to mean any person who uses or avails himself of the work of any laborer for wages. The word 'laborer' shall mean the person who receives a salary or wages for his work.

"Section 7.—Any violation of any of the provisions of this Act shall constitute a misdemeanor, and recidivism in the violation of any of its provisions shall be punished by a fine of not less than fifty dollars or by confinement in jail for thirty days."[2]

---

amendment to the title, the elimination of Section 5 and a new numbering of the Sections.

"Because of this we annotate the jurisprudence established by our Supreme Court as regards Act No. 91 as strictly applicable to Act No. 17 of 1931."

[2] Interpreting §§1 and 6 of the Act of 1919, which are identical to §§1 and 5 of the Act of 1931, this court in the case of *People* v. *Porto Rican American Tobacco Co.*, 30 P.R.R. 739, 740, said:

"It clearly appears from the Act that its principal purpose was to secure the wages of the laborer by preventing any combination whereby they might be diminished, and to that end section one thereof provides that the said wages shall be paid exclusively in legal tender and that only advances made *in cash* can be discounted, any stipulation that may be made as to payment in any other manner except in money to be void.

"In section 6 the Legislature again refers to the question of advances made *to the laborer* and positively prescribes that 'No employer shall deduct *for any reason* part of the wages earned by laborers, *to be paid to other persons*, except as provided in this section.' The prohibition is absolute. A deduction can be

The appellant contends that, since he is not the employer of the laborers who worked at the Pier of Ponce and that insofar as he acted as Manager of the Pier of Ponce, it was necessary, in order to hold him liable as an agent of the Administrative Board of the Pier of Ponce,[3] which was the actual employer, to prove that there existed an agreement of said Board authorizing or ordering the deductions from the laborers' wages. This contention lacks merit.

The evidence showed beyond a reasonable doubt that the appellant as Manager of the Pier gave orders to Mr. Sanes, the paymaster, to deduct 10 per cent from the laborers' wages; that those laborers who objected to such deduction were discharged and not given any more work; that when acting in this manner, the appellant stated that he was not authorized to give work to any one who did not pay the 10 per cent discount. After appellant was convicted in the municipal court, the question was raised before the Administrative Board of the Pier by one of its members, Mr. Castro,

---

made only when an advance has been made to the laborer. If a deduction is made in any other manner or for any other reason, it is a violation of the law which is penalized as a misdemeanor by section 8 of the Act. The wages must be paid to the laborer and the advances, if any, liquidated with him. No deduction can be made to be paid to other persons, however good the motives may be therefor.''

And at pages 744, 45:

''. . . . Each workman is the owner of and should receive all that he earns, without being subject to outside pressure which may compel him to relinquish a part of his wages involuntarily, and in order to accomplish this purpose and enforce the spirit of the law, *the prohibition imposed therein had to be, as it was general and absolute.* The payment of wages should be made to the workman, liquidating with him the deduction of what may have been advanced to him in cash. If the workman of his own will, after a reflective study of the good that he might derive from it, or of the benefits that it might bring to his fellows workers, desires to set aside a part of the product of his labor and place it in the hands of a certain person, association or union, there is no power to prevent him from doing so. But he should do it personally. Such is the present import of our laws on the matter.'' (Italics ours.)

[3] The powers of this Board are contained in § 9 of the franchise granted by Executive Council to the Municipality of Ponce, which we fully transcribed in our opinion in *Lloréns v. Administrative Board of the Pier of Ponce, ante* p. 902.

Jr., whether appellant should be discharged from employment. From the minutes of the Board's meeting held on May 23, 1940, it appears that the following incident occurred:

"The question was fully debated and all the members of the Board participated in the debate, after which it was unanimously agreed to leave the matter pending further consideration and subject to the turn that the case, now sub-judice might take in the future.

"When the Board was about to adjourn, the Superintendent, Mr. Torruella Cortada, asked to be heard and explained that the sentence passed on him by Judge Bartolomei was unjust and that he expected to show it in the District Court where he felt sure he would be acquitted. Mr. Torruella went on to explain that it was true that he had ordered the 10 per cent deductions but that he did this because he had received orders from the Administrative Board which was acting at the time the deductions were made.

"The Board took notice of the Superintendent's statement and after that it adjourned."

From the minutes of the meeting of the Board held on May 27, 1940, it appears that when the minutes of the prior meeting were approved the following was stated:

"1.—The final paragraph of the minutes of the meeting of May 23, 1940, is hereby amended as regards the statement made by Mr. Torruella Cortada in relation to the 10 per cent discount made to the laborers, and it is here recorded that said statement was not taken in shorthand nor was it delivered in writing to the Board by Mr. Torruella Cortada."

Notwithstanding the absolute denial that the appellant made in his own defense to the effect that during the eight years that he held the position of Manager of the Pier of Ponce, he did not even hear about 10 per cent being deducted from the laborers' wages, he introduced in evidence a letter[4]

[4] "Playa de Ponce, P. R.,—September 12, 1938. Mr. Rafael Torruella Cortada, Superintendent Municipal Pier, Ponce, P. R.

"Dear Sir: In a meeting called by Mr. José Tormos Diego, which was held at the office of the Municipal Pier of Ponce, with the representatives of Union No. 18, and where the 10 per cent discount was discussed, the Mayor stated in

addressed to him on September 12, 1938 by the President of the Union of Pier Workers No. 18, Playa de Ponce, which indicates that the appellant not only had knowledge of the 10 per cent discount, but also of the political purposes to which it was applied.

It was also proved that because of the 10 per cent discount made from their wages, the Pier workers struck and a conciliation committee had to intervene to solve the strike. All the evidence showed that the discounts were made by the paymaster pursuant to appellant's instructions and that when the workers came to him to protest he told them that if they were not satisfied no more work would be given to them, as was done to many laborers, in such a manner that in order to get work they had to give a different name that their own. The evidence in the instant case shows that the situation that prevailed in the Pier of Ponce as regards the 10 per cent discount from the laborers' wages was due to party politics interfering with the administration of the pier under the management of the appellant.

Notwithstanding that those facts were proved, the appellant contends that the existence of an official agreement of the Board not having been proved, which should appear from the records ordering him to make the discounts, he could be guilty of some other crime, but not of a violation of Act No. 17 of 1931. To contend that an official body must adopt such an agreement and record the same is absurd.

an emphatic manner that the laborers were compelled to give the 10 per cent or otherwise they would not work any more in that department. To this Mr. Vicente Torres stated that it was agreed to give to the Union 2½ per cent out of the 10 per cent discounted to the laborers and this was made public in the month of December when the agreements were discussed.

"We were willing to give seven and a half per cent to the *political party* for the amortization of its debts, but this was not accepted by Mr. Tormos Diego who insisted that the workers should give the full 10 per cent for politics.

"Because of these reasons the assembled workers definitely agreed not to permit any more the 10 per cent discount. We hold Mr. Tormos Diego responsible for all that has happened because of his drastic attitude towards the workers. Sincerely, (Sgd.) Juan B. Morales, President." (Italics ours.)

It can not be contended that an action which implies a violation of an Act must be proved in this manner.

██ Appellant further contends that the words contained in §5, *supra*, "No employer may, for any reason, deduct any part of the wages due to laborers in order to pay the same to any other person except in the cases provided in this Section," if read together with the definition of the word "employer" contained in §6, show that the prohibition is directed only against the employer (in this case the Administrative Board of the Municipal Pier of Ponce) and not against its employees. It is our opinion that this restricted and limited interpretation is not justified in the face of the evident intention of our Legislature when passing said Act.

If §5 of the Act is carefully examined, it will be seen that it provides that when the employer or his *agent* shall have advanced to the laborers any amount in lawful money he (that is, the employer or his agent) shall have the right to deduct said advance from the laborers wages. Afterward in the third sentence it is stated that "except in the cases provided in this section," that is, except in the case in which said advance has been made by the employer or his *agent*, the employer can not for any other reason discount any part of the wages earned by the worker to be paid to other persons. In order that the first sentence may be consistent with the third, we do not have any doubt that the word "employer" used in said third sentence should be interpreted as the "employer or his agent." The definition of the word "employer" found in §6 does not mean that the agent is not as much responsible as his employer for a violation of the Act in accordance with §7, *supra*.

In *U.S.* v. *Laudani*, decided by the Supreme Court of the United States on January 3, 1944, the interpretation of a statute forbidding that any worker in a federal project be induced to give any part of his compensation by force, fear, or threat of discharge or in any other form was involved.

The defendant contended that the Act was applicable only to the employer and that he had been a foreman, and it not having been alleged that he acted as an agent of the employer, the indictment was insufficient. The district court decided that the Act was applicable to a foreman and a jury convicted the defendant. Upon appeal the Circuit Court reversed the judgment. But on certiorari the Federal Supreme Court reversed the Circuit Court saying:

"But we think that the coerced surrender of wages by employees at the instance of a company foreman given authority by his employer to hire and discharge them cannot properly be said to bear no relation to or have no effect upon their contracts of employment, especially where, as here alleged, the surrender of wages was induced by the foreman's express threat to dismiss all employees who did not comply with his demand. Execution of such a threat against employees unwilling to pay would immediately and completely have terminated their employment contracts. We find nothing in the Act which suggests that, under these circumstances, a foreman must be deemed incapable of violating its provisions merely because he may not stand in that relationship to employees which the Circuit Court characterized as "privity of contract."

"The purpose of the Act under consideration is to extend protection not merely to the legal form of employment contracts but to the substantive rights of workers actually to receive the benefit of the wage schedules which Congress has provided for them. The evil aimed at was the wrongful deprivation of full work payments. . ."

The Supreme Court of the United States in the case of *United States* v. *Raynor*, 302 U.S. 540, stating the scope of the rule holding that penal statutes should be strictly construed, said:

"We are not unmindful of the salutary rule which requires strict construction of penal statutes. No rule of construction, however, requires that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope nor does any rule require that the act be given the 'narrowest meaning'."[5]

---

[5] To the same effect see *United States* v. *Corbett*, 215 U.S. 233, 242, which we cited in the case of *Ex parte Francisco Mercado*, *ante*, p. 877.

918

The intention of the Legislature could not be to grant inmunity to a person like the appellant who, invested with apparent or real authority to act in the name of his employer, as he testified before the Board, can commit the criminal act more effectively than the employer himself, since the Board as such, did not directly intervene with the laborers and pay their salaries. In accordance with the evidence in this case, both the Board and the appellant were liable and both could have been prosecuted. Under the established facts, to relieve the agent of liability would amount to taking away from the statute a great part of its coercive value, since then it could be avoided by the very easy trick of giving secret orders to the agent and then publicly denying the same. We should not render useless the protection given by §5, *supra,* to prefer a general rule the application of which can not be justified in this case.

The judgment appealed from is affirmed.